[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
{¶ 1} Relator, Allied Chemical Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting the application for permanent total disability ("PTD") compensation filed by respondent-claimant, Sable Riley, and to enter an order denying said compensation.
 {¶ 2} Relator's complaint was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate rendered a decision and recommendation, which included comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate determined that the commission did not abuse its discretion in awarding PTD compensation to claimant. Relator has filed objections to the magistrate's decision. The matter is now before this court for independent review.
 {¶ 3} In its objections, relator reargues issues adequately addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, relator's objections are overruled.
 {¶ 4} Following independent review pursuant to Civ.R. 53, this court finds that the magistrate has properly determined the pertinent facts and applied the salient law to those facts. Accordingly, this court adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. Therefore, the requested writ of mandamus is denied.
Objections overruled; writ denied.
BRYANT and LAZARUS, JJ., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action, relator, Allied Chemical Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Sable Riley, and to enter an order denying said compensation.
 {¶ 6} Findings of Fact:
 {¶ 7} 1. On July 26, 1962, Sable Riley ("claimant") sustained an industrial injury while employed by relator, Allied Chemical Corporation ("relator" or "Allied"). On his workers' compensation claim application, filed shortly after the date of injury, claimant indicated that he was employed in "maintenance." He described the accident as follows: "Three men and myself were installing a new foot shaft assembly (wgt. 500) and all at once my leg started to hurt. We had to lift the assembly into a socket."
 {¶ 8} 2. The industrial claim is allowed for: "Herniated nucleus pulposus; arthritis of neck and back; anxiety neuroses," and is assigned claim number 2-322817.
 {¶ 9} 3. In March 1967, claimant underwent a lumbar laminectomy at the L4-5 level on the right.
 {¶ 10} 4. Claimant continued to work for Allied until 1978 when he was 62 years of age. He has not worked since 1978.
 {¶ 11} 5. Claimant has filed four applications for PTD compensation.
 {¶ 12} 6. Claimant's first PTD application was filed in 1986. Following a December 15, 1987 hearing before the then five-member commission, the commission issued an order denying the PTD application.
 {¶ 13} 7. Claimant's second PTD application was filed on January 23, 1991. Following an April 23, 1993 hearing before the then five-member commission, the commission issued an order denying that PTD application. The commission's order states in part:
 {¶ 14} "Claimant is at age of 76 and he was 45 years old on the date of injury. * * * Dr. Turner, whose report is relied upon, concluded that the claimant's restrictions in function for the allowed conditions only accounted for a permanent parital [sic] impairment of 15% from an orthopedic standpoint. * * * [T]he medical evidence indicates the claimant's industrial injury has not resulted in significant impairment or functional restrictions. Considering the claimant's limited industrial impairment in conjunction with the fact that he worked for 16 years post injury and his varied work experience, the Commission finds that the residual effects from the claimant's industrial injury do not preclude his return to gainful work[.] Rather, noting the report of Dr. Turner, the Commission determines the claimant's advanced aged [sic] is the predominant cause of the claimant's present inability to work. Accordingly, the Commission denies his Application for Permanent Total Disability."
 {¶ 15} 8. Claimant's third PTD application was filed on January 24, 1996. Following a November 19, 1996 hearing before a commission staff hearing officer ("SHO"), the SHO issued an order denying that PTD application. The SHO's order states in part:
 {¶ 16} "Claimant is an 80 year old male with an 8th grade education and a relevant work history including jobs in maintenance, pipe fitting and as a blueprint layout person. The claimant underwent a laminectomy secondary to recognized file conditions on 03/17/1967. Shortly after this procedure, claimant returned to work and continued to work until 1978. Claimant last worked on 10/20/1978 at the age of 62. Per his IC-2 application claimant can read, write and do basic math.
 {¶ 17} "Claimant was examined on the commission's behalf by Dr. Robert Turton, D.O. In his psychiatric evaluation dated 08/27/1996, Dr. Turton opined that claimant is not prevented from returning to his previous employment and that he sustained a 10% psychiatric impairment.
 {¶ 18} "Although claimant's allowed physical conditions are significant, he nonetheless was able to work an additional 16 years post injury and eleven years post laminectomy. Further, claimant testified he has had a slip and fall resulting in a hip replacement, none of which is recognized under his claim and all of which occurred in the recent past.
 {¶ 19} "The Hearing Officer also finds no evidence of any past efforts to obtain retraining and/or rehabilitation. Claimant was age 62 when he last worked in 1978. At that point, claimant's age would not have been a liability or an asset. * * * Once again, there is no persuasive evidence in file to reasonably suggest that claimant was precluded physically or mentally from pursuing rehabilitation or retraining during the period from 1978 onward. * * *"
 {¶ 20} 9. Claimant's fourth application for PTD compensation was filed on June 4, 2001. In support, claimant submitted a report, dated May 22, 2001, from his treating[1] physician Ay Hoback, M.D. Dr. Hoback's report states:
 {¶ 21} "It is my opinion that Mr. Riley is unable to engage in any employment due to the effect of his work related injury in 1962. Both his L-S spine and his C-spine show extreme degenerative disc changes [with] spinal canal stenosis, spurring and scarring. He has peripheral neuropathic complaints over both upper extremities [right greater than left]."
 {¶ 22} 10. The fourth PTD application prompted Allied to have claimant examined by Gerald S. Steiman, M.D., on August 29, 2001. Dr. Steiman reported:
 {¶ 23} "When considering solely the allowed conditions of `herniated nucleus pulposus; arthritis of neck and back', Mr. Riley's history, medical record review and physical examination do not indicate he is unable to perform sustained remunerative employment.
 {¶ 24} "Mr. Riley's history, medical record review and physical examination indicate that he is able to return to sustained remunerative employment of a sedentary/light description.
 {¶ 25} "* * *
 {¶ 26} "Mr. Riley's history, medical record review and physical examination indicate the presence of a Diagnosis Related Estimate Category III impairment of the lumbosacral spine or a 13% permanent partial impairment of the body as a whole. A Category III impairment of the lumbosacral spine indicates an individual with significant findings of radiculopathy or an HNP with radiculopathy, or radiculopathy S/P surgical intervention.
 {¶ 27} "When considering the allowed condition of `arthritis of neck', Mr. Riley demonstrates evidence of a Diagnosis Related Estimate Category II impairment of the cervicothoracic spine or a 5% permanent partial impairment of the body as a whole. An individual with a Diagnosis Related Estimate Category II impairment of the cervicothoracic spine has nonverifiable radicular complaints or spasm or guarding at the time of the examination.
 {¶ 28} "In summary, utilizing the Combined Values Chart, Mr. Riley has evidence of a 17% permanent partial impairment of the body as a whole secondary to Claim 2-322817."
 {¶ 29} 11. The commission scheduled claimant for an examination that was performed by psychiatrist Donald L. Brown, M.D., on September 27, 2001. Dr. Brown reported:
 {¶ 30} "In my opinion, Mr. Riley has reached MMI with respect to his previously allowed anxiety neurosis and can be considered permanent. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate him as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the second edition in the fourth edition, I'd rate his impairment at 25%."
 {¶ 31} 12. On an occupational activity assessment form, Dr. Brown indicated that the psychiatric condition did not prevent a return to the former position of employment or to any sustained remunerative employment.
 {¶ 32} 13. The commission also scheduled claimant for an examination that was performed by John W. Cunningham, M.D., on October 1, 2001. Dr. Cunningham reported:
 {¶ 33} "* * * [T]his individual has a 27% whole person permanent partial impairment in regards to the the [sic] non-psychiatric, non-emotional aspects of this claim for which this examiner was asked to evaluate this individual. * * * In my medical opinion, this individual is employable in sedentary work provided he is not asked to be ambulatory except for personal needs; i.e. ambulatory for bathroom, breaks or meals with no climbing of stair steps, ramps, ladders, or scaffolding in the course of his employment."
 {¶ 34} 14. Dr. Cunningham also completed a "Physical Strength Rating" form on which he indicates that claimant is capable of "sedentary work" as defined by the commission's rules.
 {¶ 35} 15. The commission requested an employability assessment report from Joseph M. Cannelongo, a vocational expert. Mr. Cannelongo's report, dated November 28, 2001, lists "employment options" based upon the reports of Drs. Steiman and Cunningham. The Cannelongo report further states:
 {¶ 36} "His age (84), last school attendance (1932), limited education (8th), and length of time since last employment (23 years) suggest that he may have some difficulty acquiring new skills for entry level employment. However, despite the apparent academic deficits, the claimant was able to obtain, and retain, skilled level employment for approximately 31 years. This would support his ability to learn. His age at the time of injury (45) or retirement (62) may have improved his ability to both learn new skills and obtain alternate employment."
 {¶ 37} 16. Allied submitted a vocational report, dated December 17, 2001, from Craig Johnston, a vocational expert. The Johnston report states:
 {¶ 38} "At the age of 84, Mr. Riley is unlikely to competitively seek, obtain or sustain remunerative employment. However, he did work for 16 years following his industrial injury, and upon retiring in 1978, assuming a physical capacity consistent with the sedentary to light demand level, Mr. Riley could have engaged in work with little vocational adjustment. He possesses skills from his past work to engage in activity as an Assembler, Quality Control Inspector, or Locksmith. Again, he could have sought to engage in academic remediation to enhance his employability. With his skills, and minimal training (on-the-job through short-term) feasible occupations would likely have included Information Clerk, Gate Guard, or Surveillance System Monitor. His education, although limited, was not a barrier to obtaining skilled employment as a Pipe Fitter/Crew Supervisor, and he has demonstrated the ability to successfully engage in vocational training, albeit many years ago.
 {¶ 39} "Taking into consideration the medical opinions of Drs. Steiman, Cunningham, and Brown, as well as the relevant vocational factors, Mr. Riley would have been capable of working in 1978 and in the subsequent years until his voluntary retirement. Today, while his age would be seen as a barrier to employment, it alone is not work prohibitive. If motivated, there does exist organizations which serve to train and place the older worker. For these reasons, from a vocational standpoint, Sable Riley is not permanently and totally disabled."
 {¶ 40} 17. Following an April 25, 2002 hearing, an SHO issued an order granting the PTD application filed June 4, 2001. The SHO's order states:
 {¶ 41} "Permanent and total disability compensation is hereby awarded from 05/22/2001 (the date of Dr. Ay Hoback, M.D. report) and to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to Ohio Revised Code Section 4123.58(A).
 {¶ 42} "In a report dated 05/22/2001 Dr. Hoback indicates that claimant is unable to engage in any employment due to the effects of his work related injury. Dr. Hoback notes that both claimant's lumbosacral spine and his cervical spine show extensive degenerative disc changes.
 {¶ 43} "The SHO found claimant's testimony to be persuasive that he retired at age 62 due to the constant pain in his back which was caused by the industrial injury of 07/26/1962. While it may be true that claimant was able to work an additional sixteen years following his original injury, the SHO finds at today's hearing that the claimant provided credible testimony that the pain that has been caused by the recognized file conditions has essentially debilitated him from pursuing any employment options that he might otherwise have had. Claimant literally worked until he could no longer withstand the pain.
 {¶ 44} "The SHO also finds that there is a lack of evidence that would indicate that claimant has any transferable skills from his previous work history as a maintenance man which would enable the claimant to engage in sedentary employment, which is the level of employment that claimant would be limited to. ([W]hen considering other medical reports in file.) In this regard the SHO notes that the claimant was examined on 10/01/2001 by Dr. John Cunningham, M.D., a specialist in occupational medicine. In his report Dr. Cunningham opined that claimant would be capable of sedentary employment provided that `he is not asked to be ambulatory except for personal needs; i.e., ambulatory for bathroom, breaks or meals with no climbing of stairs, steps, ramps, ladders or scaffolding in the course of his employment.' When considering this opinion the SHO finds that claimant is capable of something that is less than true sedentary employment and that his ability to engage in this very limited form of employment is due to the recognized file conditions.
 {¶ 45} "The SHO thus finds that based on these medical and vocational factors plus claimant's very credible testimony that he is precluded from any sustained remunerative employment when considering his allowed conditions alone and that permanent total disability compensation is properly granted in the manner as specified above."
 {¶ 46} 18. On July 12, 2002, relator, Allied Chemical Corporation, filed this mandamus action.
 {¶ 47} Conclusions of Law:
 {¶ 48} Relator's multifaceted challenge to the commission's PTD award divides two-fold into: (1) traditional challenges to the evidence and reasoning presented in the order itself, and (2) further challenges based upon the proposition that the PTD award cannot be "reconciled" with prior commission orders denying the prior PTD applications.
 {¶ 49} It is the magistrate's decision that relator's challenge to the commission's PTD award must fail as to both the traditional challenges to the evidence and reasoning presented in the order itself and the further challenges based upon prior commission orders. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus as more fully explained below.
 {¶ 50} The magistrate shall first address the traditional challenges to the commission's order itself without reference to prior commission orders. The SHO order of April 25, 2002 ("commission's order") can be read as stating alternative bases for granting the PTD application. The first basis is premised exclusively upon Dr. Hoback's May 22, 2001 report which is cited to support a finding that the medical impairment resulting from the allowed conditions of the claim prohibits all sustained remunerative employment without reference to the vocational factors. The second basis is premised upon Dr. Cunningham's opinion that the industrial injury permits sedentary employment and the commission's analysis of the nonmedical factors. Because alternative bases are presented for granting the PTD application, the award must be upheld if either one of the bases is supported by some evidence. State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, 761 (it is not improper for the commission to state alternative grounds for supporting the order adjudicating a PTD application).
 {¶ 51} Relator does challenge Dr. Hoback's report as failing to constitute some evidence upon which the commission can rely but the challenge can only be found in a footnote of relator's reply brief stating:
 {¶ 52} "OAC 4121-3-34(D)(3)(d) provides: `All medical evidence of impairment shall be based on objective findings reasonably demonstrable and medical reports that are submitted shall be in conformity with the industrial commission medical examination manual.' Dr. Hoback's conclusion in his handwritten report is not based upon any objective clinical findings, nor does it conform in any way to the Commission's medical examination manual (requiring, among other things, that objective clinical findings (e.g. range of motion) be specified in the report)." (Relator's reply brief at 2.)
 {¶ 53} Here, relator attempts to eliminate the significance of Dr. Hoback's report by asserting that the commission "does not purport to rely upon it." (Relator's reply brief at 2.) The magistrate disagrees with relator's characterization of the commission's order at issue.
 {¶ 54} The commission's order specifies that compensation is to begin on May 22, 2001, the date of Dr. Hoback's report. The commission further notes that Dr. Hoback indicates that claimant is unable to engage in any employment due to the effects of his work-related injury. Under such circumstances, commission reliance upon Dr. Hoback's report is clear.
 {¶ 55} In fact, as previously noted, the commission exclusively relied upon Dr. Hoback's May 22, 2001 report to support its finding that claimant is PTD due to the industrial injury alone irrespective of the non-medical factors. Hence, if Dr. Hoback's report constitutes some evidence to support the commission's PTD finding, the traditional inquiry here ends.
 {¶ 56} With respect to Dr. Hoback's report, the issue is whether Dr. Hoback sufficiently stated medical findings that support his conclusion that claimant is PTD.
 {¶ 57} State ex rel. Frigidaire, Inc. v. Indus. Comm. (1994),70 Ohio St.3d 166, is instructive on this issue. The issue in Frigidaire was whether Dr. Reed's report was some evidence of PTD. Dr. Reed's report read in its entirety:
 {¶ 58} "`The above patient is totally permanently disabled, due to back injury (Trauma aggravating arthritic changes in lumbar 
thoracic spine). He is able to walk short distances but is unable to do any lifting or work.
 {¶ 59} "`He is using some hydrotherapy and taking Motrin at the present time.
 {¶ 60} "`He also shows considerable depression nervousness for which he takes Elavil. This may be related to the head injury laceration.'" Id. at 166-167.
 {¶ 61} The Frigidaire court further states:
 {¶ 62} "Frigidaire also alleges a lack of supportive findings in the report. We again disagree. Although skimpy, the report pinpoints the claimant's arthritic condition as the source of his problems. It also indicates that claimant cannot do lifting and is restricted to brief walking, both of which would impact on his ability to work. Given the commission's authority to evaluate evidentiary weight and credibility, its decision to rely on Reed's report is not an abuse of discretion." Id. at 168.
 {¶ 63} Significantly, Dr. Hoback is claimant's treating physician who states that, in his opinion, claimant is unable to engage in any employment due to the effect of his work-related injury in 1962.
 {¶ 64} Extreme degenerative disc changes in the lumbosacral and cervical spine, along with peripheral neuropathic complaints over both upper extremities provide supportive medical findings for Dr. Hoback's disability conclusion that the industrial injury alone precludes all employment. Although "skimpy," as was the case with Dr. Reed's report in Frigidaire, the supportive findings appear to be causally linked to the allowed conditions "herniated nucleus pulposus; arthritis of neck and back." As a treating physician, Dr. Hoback would be familiar with claimant's condition. Presumably, Dr. Hoback had an opportunity to review X-rays or a radiograph report to support his observation regarding extreme degenerative disc changes. His patient's "peripheral neuropathic complaints over both extremities," if accepted by Dr. Hoback as valid, can be a basis for his medical opinon.
 {¶ 65} In short, Dr. Hoback's May 22, 2001 report provided the commission with some evidence to support the PTD award without reference to the non-medical or vocational factors. Under such circumstances, there is no need for this court to address relator's contention that the commission's non-medical analysis is flawed.
 {¶ 66} As earlier noted, relator further contends that the commission's PTD award is "irreconcilable" with its prior orders denying previous PTD applications and, on that basis, this court must order that the PTD award be vacated.
 {¶ 67} Relator's contention that the commission's PTD award is irreconcilable with its prior orders is premised upon the principle that the doctrines of res judicata and collateral estoppel are applicable to administrative proceedings. Jacobs v. Teledyne, Inc. (1988),39 Ohio St.3d 168; State ex rel. B.O.C. Group, General Motors Corp. v. Indus. Comm. (1991), 58 Ohio St.3d 199.
 {¶ 68} Based upon the commission's prior orders denying prior PTD applications, relator here presents a two-fold challenge to the commission's PTD award: (1) that the commission impermissibly granted PTD compensation to the claimant for simply growing old, and (2) that the commission's November 19, 1996 finding that claimant had failed to pursue rehabilitation or retraining since 1978 when he last worked at age 62, precludes the commission's PTD award allegedly premised upon a finding that claimant has been unable to work since 1978.
 {¶ 69} Ohio Adm. Code 4121-3-34(D)(1)(g) is pertinent to the first of relator's challenges based upon prior commission orders. That commission rule states:
 {¶ 70} "If, after hearing, the adjudicator determines that there is appropriate evidence which indicates the claimant's advanced age is the sole cause or primary obstacle which serves as a significant impediment to reemployment, permanent total disability compensation shall be denied. However, a decision based upon age must always involve a case-by-case analysis. The claimant's age should also be considered in conjunction with other relevant and appropriate aspects of the claimant's nonmedical profile."
 {¶ 71} The commission's rule regarding advanced age as the sole cause of disability is presumably taken from this court's decision in Speelman, supra, at 763, wherein this court states:
 {¶ 72} "The non-medical factors include those that may, in certain instances, be held to constitute causation for the person being unable to engage in substantially remunerative employment despite the medical disability from the allowed condition(s). For example, claimant may be disabled at age fifty-five from returning to the former position of employment but, at that time, be capable of obtaining sustained remunerative employment within the medically limiting capabilities that the claimant has, after considering all non-medical factors, including age. Ten or fifteen years may elapse with the physical condition remaining approximately the same. At that time, the age factor may be combined with the disability to disqualify claimant from any sustained remunerative employment. In that event, the Industrial Commission should have the discretion to find that the sole causal factor is the increase in age rather than the allowed disability."
 {¶ 73} According to relator, the commission exercised its discretion to attribute claimant's inability to work to age alone when, in April 1993, it denied claimant's second PTD application, stating: "Rather, noting the report of Dr. Turner, the Commission determines the claimant's advanced aged [sic] is the predominant cause of the claimant's present inability to work."
 {¶ 74} The commission's April 7, 1993 order stated reliance upon the report of Dr. Turner which states in part:
 {¶ 75} "The claimant does have evidence in reviewing the claim file of degenerative disc disease of the cervical and lumbar area.
 {¶ 76} "He appears objectively to have had a fairly good response to his lumbar diskectomy though subjectively obviously he's not feeling very well. This would correspond roughly to a 2-E impairment and certainly has as much to do with age as it does of any industrial injury. Claimant obviously would have restriction in his function again due as much to age as to his industrial injury. He would be unable to repetitively bend and lift. He would be unable to sit for long periods of time or stand for long periods of time. His percentage of impairment is difficult to assess again because a combination of etiologic factors but it would appear to be roughly 15% permanent partial impairment. He would not be a candidate to return to his former position of employment. * * *"
 {¶ 77} Relator argues:
 {¶ 78} "There is no evidence that the age related disabilities found by Dr. Turner and relied upon by the Commission in 1993 have lessened or resolved in any way. Indeed, the only changed fact since the Commission's denial of PTD at that time is that Claimant is now 85 years old. Under these circumstances, it is clear that the Commission has improperly compensated Claimant for merely growing old, a result it refused to reach almost ten years ago. This result is both inconsistent with the Commission's prior orders and contrary to Ohio law. DeZarn [State ex rel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461], supra; Speelman, supra." (Emphasis sic; Relator's brief at 6.)
 {¶ 79} Initially, the magistrate answers relator's argument with some observations regarding the commission's April 7, 1993 order. Noting that some of claimant's restrictions are age related rather than injury related, Dr. Turner nevertheless found that claimant was roughly 15 percent permanently impaired due to the industrial injury. Relying upon Dr. Turner's report, the commission concluded that advanced age was the predominant cause of claimant's inability to work. The commission never analyzed the non-medical factors even though Dr. Turner found that the industrial injury precluded a return to the former position of employment.
 {¶ 80} The commission's April 7, 1993 finding, based upon Dr. Turner's report, differs somewhat from the scenario presented in Speelman, supra. The commission's April 7, 1993 finding was not premised upon a lapse in time during which the condition had remained the same but age alone became a factor. The commission's April 7, 1993 finding was based upon Dr. Turner's assessment that aging had played a far more significant role in claimant's arthritic condition than the injury itself, assuming that age itself produces arthritis even in the absence of injuiry.
 {¶ 81} Here, relator seems to suggest that the commission's finding based upon Dr. Turner's report must be given a res judicata effect with respect to the April 25, 2002 adjudication even though Dr. Hoback attributed extreme degenerative disc changes to the industrial injury. Relator is incorrect.
 {¶ 82} Dr. Turner opined on September 11, 1992, some nine years prior to Dr. Hoback's May 22, 2001 opinion. Claimant's medical condition, determined by the commission in April 1993 based upon evidence rendered in September 1992, cannot bind the commission with respect to a determination of the status of relator's medical condition some nine years later. B.O.C. Group, at 201 (res judicata does not apply when the issue is the claimant's physical condition or degree of disability at two entirely different times).
 {¶ 83} Moreover, new and changed circumstances is not a prerequisite to com-mission consideration of a subsequent PTD application. State ex rel. Youghiogheny Ohio Coal Co. v. Indus. Comm. (1992), 65 Ohio St.3d 351.
 {¶ 84} Relator asserts that the only changed fact since the commission's denial of PTD in 1993 is that claimant is now 85 years old. Relator is incorrect. While relator is indeed considerably older, the commission has relied upon new medical evidence from Dr. Hoback supporting a finding that, as of May 22, 2001, the industrial injury alone prohibits all employment. Nothing in Speelman or DeZarn prevents the commission from considering the claimant's increase in age in combination with new medical evidence of a greater industrial impairment in rendering a PTD determination. See State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 86 (the very fact of a claimant's advancing age may serve to support the granting of an application for PTD compensation after an initial denial).
 {¶ 85} Moreover, the commission was under no obligation or duty to address the impact of the 1993 order upon claimant's fourth application for PTD compensation.
 {¶ 86} While it is indeed well-settled that the doctrines of res judicata and collateral estoppel are applicable to administrative proceedings, those doctrines are not self-executing. If relator wanted the commission to consider and address any alleged res judicata effect of the commission's prior orders, it was obligated to raise the issue at the April 25, 2002 hearing before the SHO. There is no evidence in the record that relator did so. Relator did not record the April 25, 2002 proceedings and so there is no transcript available. The commission's April 25, 2002 order makes no mention that relator raised the impact of the commission's prior orders. Even here in this action, relator does not specifically assert that it asked the commission to review its prior orders in adjudicating the fourth application. Thus, relator seems to argue that this court must, in the first instance, determine whether the commission's PTD award can be reconciled with the prior orders. It is not the duty of this court to do so in the first instance. It is well-settled that issues not raised administratively are not reviewable in mandamus. Quarto, supra, at 81-83.
 {¶ 87} In short, relator's contention that the commission awarded claimant PTD compensation for simply growing old lacks merit.
 {¶ 88} As earlier noted, relator also contends that the commission's November 19, 1996 finding that claimant had failed to pursue rehabilitation or retraining since 1978 when he last worked at age 62 precludes the commission's PTD award allegedly premised upon a finding that claimant has been unable to work since 1978. This contention also lacks merit.
 {¶ 89} To begin, while it is true that the commission's April 25, 2002 order credits claimant's hearing testimony that the pain from the industrial injury caused him to quit work in 1978 at the age of 62 and debilitated him from pursuing employment options ever since, the order only awards PTD compensation beginning May 22, 2001. There is no award of PTD compensation for the period prior to May 22, 2001, when relator claimed that the pain debilitated him from working. Accordingly, the commission's award of PTD compensation beginning May 22, 2001, is not in conflict with prior commission adjudications denying PTD compensation for earlier periods of time.
 {¶ 90} Nevertheless, relator contends that the commission's November 19, 1996 finding that claimant had failed to pursue rehabilitation or retraining since 1978 is irreconcilable with that portion of the commission's order crediting claimant's hearing testimony regarding the debilitating nature of the pain he has experienced since 1978. However, relator's argument assumes that an inability to work from 1978 up to May 22, 2001, was critical to the commission's PTD award. Clearly it was not. As noted earlier, the commission's PTD award is based upon the May 22, 2001 medical opinion of Dr. Hoback. The commission did not award PTD prior to May 22, 2001.
 {¶ 91} Relator's reliance upon State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525, and State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250, is misplaced. While those cases perhaps support the commission's denial of the third application for PTD compensation (an issue not before this court), those cases clearly do not lend support for the proposition that a prior failure to pursue rehabilitation or retraining forever bars PTD compensation, particularly where there arises new evidence that the industrial injury alone produces PTD.
 {¶ 92} Moreover, the commission had no duty to address the impact of its November 19, 1996 order upon relator's fourth application for PTD compensation. Again, there is no evidence that relator ever asked the commission to consider the impact of its prior orders when it adjudicated the fourth PTD application. Accordingly, the commission did not abuse its discretion in failing to address the impact of its prior determination that relator failed to pursue rehabilitation or retraining.
 {¶ 93} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] The September 4, 2001 report of Gerald S. Steiman, M.D., who examined on behalf of Allied states: "Presently Mr. Riley is under the care of Dr. Loback [sic], a family practitioner."